UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**CHARLES JENKINS,**

Petitioner,

**v.**                                             Case No. 8:18-cv-1643-MSS-AAS

**SECRETARY, DEPARTMENT
OF CORRECTIONS,**

Respondent.

_____/

# O R D E R

Jenkins petitions for the writ of habeas corpus under 28 U.S.C. § 2254 challenging his state court conviction for sexual battery, for which he is serving a life sentence. After reviewing the petition (Doc. 1), the response and appendix (Doc. 9), and the reply (Doc. 13), the **COURT ORDERS** that the petition is **DENIED**.

## PROCEDURAL BACKGROUND

A jury found Jenkins guilty of lewd and lascivious battery on a minor, K.F. (Doc. 9-2 at 417–18), and a second jury in a separate trial found Jenkins guilty of sexual battery on a minor, A.B. (Doc. 9-3 at 2–3) The trial court sentenced Jenkins to life for the sexual battery conviction and a consecutive 15 years for the lewd and lascivious battery conviction. (Docs. 9-2 at 420–23 and 9-3 at 5–8) In a consolidated appeal, the state appellate court affirmed. (Doc. 9-3 at 29, 61) The post-conviction court denied relief without an evidentiary hearing (Doc. 9-3 at 209–26), and the state appellate court affirmed. (Doc. 9-3 at 399)

Jenkins's timely federal petition followed. In the petition, the claims concern Jenkins's conviction for sexual battery on A.B. only. (Doc. 1 at 4–15)

1

## FACTS[1]

A.B. testified at the sexual battery trial as follows. Jenkins lived with A.B., A.B.'s mother, and A.B.'s brother. A.B.'s mother dated Jenkins whom A.B. called "Dad." When A.B. was 10 years old, Jenkins and A.B. stayed home while A.B.'s mother went to the doctor. Jenkins told A.B. to remove her dress. Jenkins took off his own pants and placed his penis in A.B.'s "pocketbook." A.B. referred to her vagina as her "pocketbook." Jenkins told A.B. not to tell anyone because Jenkins would go to prison and authorities would take A.B. away from her mother.

On cross-examination, A.B. testified that Jenkins disciplined her, required her to complete chores around the home, and frequently fought with her mother. Jenkins's fights with A.B.'s mother upset A.B. A.B. was happier before Jenkins moved in with her family. A.B. first called Jenkins a rapist during a fight between her mother and Jenkins. Police came to her home that night. A.B. did not immediately tell police about the sexual battery because she was scared. A.B. told police that she had seen Jenkins naked in the kitchen in the middle of the night and the next day Jenkins asked her if she wanted to touch his penis. A.B. told Jenkins no and left to go to school. A.B. denied that Jenkins had touched her.

A detective testified that A.B. disclosed the sexual battery two months later. The detective arranged for a physical exam for A.B. But a medical examiner testified that she would not normally find forensic evidence of sexual abuse 72 hours after the abuse occurs.

The prosecutor introduced evidence that Jenkins abused A.B.'s cousin, K.F., as similar fact evidence of other crimes, wrongs, or acts. § 90.404(2), Fla. Stat. K.F. testified that she spent the night at A.B.'s home. K.F. and A.B. slept in the same room. Jenkins came

---

[1] The factual summary derives from the briefs on direct appeal and trial transcripts.

into the room, pulled down K.F.'s pants, and placed his penis in her vagina. A partial DNA profile from vaginal swabs from K.F. and a full DNA profile from K.F.'s underwear matched Jenkin's DNA.

The defense presented a case-in-chief. A.B.'s mother testified that, the night when K.F. spent the night, A.B.'s mother and Jenkins loudly argued about something unrelated to the sexual battery. A.B.'s mother called the police. Before police arrived, Jenkins told A.B.'s mother that she was going to jail. A.B. responded that Jenkins was going to jail for molesting her. When police arrived, A.B.'s mother reported A.B.'s accusation to police.

## STANDARDS OF REVIEW

### AEDPA

Because Jenkins filed his federal petition after the enactment of the Antiterrorism and Effective Death Penalty Act, AEDPA governs his claims. *Lindh v. Murphy*, 521 U.S. 320, 327 (1997). AEDPA amended 28 U.S.C. § 2254(d) to require:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the U.S. Supreme Court] on a question of law

or if the state court decides a case differently than [the U.S. Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). A decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the U.S. Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." 529 U.S. at 413. Clearly established federal law refers to the holding of an opinion by the U.S. Supreme Court at the time of the relevant state court decision. 529 U.S. at 412.

"[AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 694 (2002). An unreasonable application is "different from an incorrect one." 535 U.S. at 694. Even clear error is not enough. *Virginia v. LeBlanc*, 137 S. Ct. 1726, 1728 (2017). A federal petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

**Ineffective Assistance of Counsel**

Jenkins asserts ineffective assistance of counsel — a difficult claim to sustain. *Strickland v. Washington*, 466 U.S. 668, 687 (1984) explains:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

"There is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690.

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. To demonstrate prejudice, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 691. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690–91. A defendant cannot meet his burden by showing that the avenue chosen by counsel was unsuccessful. *White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992). Because the standards under *Strickland* and AEDPA are both highly deferential, "when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105. "Given the double deference due, it is a 'rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.'" *Nance v. Warden, Ga. Diag. Prison*, 922 F.3d 1298, 1303 (11th Cir. 2019) (citation omitted).

The state appellate court affirmed in an unexplained decision the post-conviction court's order denying Jenkins's ineffective assistance of counsel claims. (Doc. 9-3 at 399) A

federal court "'look[s] through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume[s] that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

Because the post-conviction court recognized that *Strickland* governed the claims (Doc. 9-3 at 210), Jenkins cannot meet the "contrary to" test in Section 2254(d). Jenkins instead must show that the state court either unreasonably applied *Strickland* or unreasonably determined a fact.

## DISCUSSION

**Ground One**

Jenkins asserts that trial counsel was ineffective for not interviewing and presenting testimony by A.B.'s aunt, Kristina Boyd. (Doc. 1 at 4–5) The post-conviction court denied the claim as follows (Doc. 9-3 at 210–12) (state court record citations omitted):

> The Defendant alleges that counsel was ineffective for failing to investigate Kristina Boyd as a potential witness. The Florida Supreme Court set forth a four-part test that a defendant must meet when asserting a claim for ineffective assistance of counsel for failing to call, interview, or investigate a witness. *Nelson v. State*, 875 So. 2d 579 (Fla. 2004). The *Nelson* test requires a defendant to allege (1) the identity of the prospective witness; (2) the substance of the witness's testimony; (3) an explanation of how the omission of this evidence prejudiced the outcome of trial; and (4) an assertion that the witness was available to testify. *Id.* A defendant must also allege that he advised counsel of the existence of such a witness, and that such a witness was available. *Prieto v. State*, 708 So. 2d 647, 649 (Fla. 2d DCA 1998).

> The Defendant claims that he advised counsel of Kristina Boyd and that she was available to testify. The Defendant alleges that Kristina Boyd would have testified that she took care of the victim during times that she wasn't in school and that the Defendant was never left alone with the victim. In addition, the Defendant contends that Kristina Boyd would testify that the victim made similar allegations of sexual abuse against her

mother's prior boyfriend and that that was the reason the victim stayed with Kristina Boyd. The Defendant states that this testimony would have created reasonable doubt in the minds of the jury as to the victim's credibility and the result of the proceedings would have been different.

The Defendant's claim that counsel failed to locate this witness is refuted by the record. The Court held a colloquy with the Defendant about his desire to testify. During the colloquy, the Court asked the Defendant if he had asked his attorney to "locate any witnesses to testify in this case that have not been located and will not be here." The Defendant responded "no, sir." Therefore, the Defendant's claim that he asked counsel to locate this witness and that she failed to do so is refuted by the record.

Further, the victim testified that she lived at home with her mother, brother, and the Defendant. Counsel argued during opening statements that the Defendant lived with Barbara Boyd, the victim's mother, and the victim. Barbara Boyd also testified that she lived with her daughter and the Defendant. The victim's cousin testified that she spent the night at Barbara Boyd's house, and that the victim, Barbara Boyd, and the Defendant were present. Officer Carter testified that he was dispatched to Barbara Boyd's residence for a domestic disturbance and that Barbara Boyd's daughter and niece were present. Therefore, the Defendant's claim that the victim did not live or stay with Barbara Boyd when she was not in school is refuted by the record.

In addition, the Defendant is not entitled to relief on this ground because the alleged testimony of Kristina Boyd relating to the victim's prior allegations would not have been admissible. *See* § 90.801, Fla. Stat. (2010); *Pantoja v. State*, 59 So. 3d 1092, 1097 (Fla. 2011) (holding that sections 90.610, 90.608(2), and 90.405(2) do not permit impeachment of a witness with evidence of prior accusations of molestation by the victim that were either false or that did not result in a criminal conviction). For the aforementioned reasons, this claim is denied.

Because Jenkins failed to come forward with an affidavit or sworn testimony to show that Kristina Boyd would have testified in the manner that he contends, his claim is speculative. *Sullivan v. DeLoach*, 459 F.3d 1097, 1109 (11th Cir. 2006) ("This prejudice burden

is heavy where the petitioner alleges ineffective assistance in failing to call a witness because 'often allegations of what a witness would have testified to are largely speculative.'") (citations omitted); *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978) ("[C]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative."); *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted) ("[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim.").

Even so, at the end of the prosecution's case the trial court conducted a colloquy with Jenkins as follows (Doc. 9-3 at 315–16):

> [Court:]        Okay. Now, Mr. Jenkins, have you asked your attorney to locate any witnesses to testify in this case that have not been located and will not be here?
>
> [Jenkins:]      No, sir.

Whether testimony concerning A.B.'s accusations of sexual abuse against her mother's ex-boyfriend was admissible is an issue of state law, and a state court's determination of state law receives deference in federal court. *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985) ("The federal courts must defer to a state court's interpretation of its own rules of evidence and procedure."). Because (1) A.B.'s alleged accusations were against her mother's ex-boyfriend — not Jenkins, (2) the accusations did not result in a criminal conviction, and (3) A.B.'s character was not an essential element of the charge or a defense (Doc. 9-3 at 187–88), the trial court would have excluded the

accusations. *Pantoja*, 59 So. 3d at 1096–98. Because the trial court would have excluded testimony by Kristina Boyd about the prior accusations, trial counsel was not ineffective. *Pinkney v. Sec'y, Dep't Corrs.*, 876 F.3d 1290, 1297 (11th Cir. 2017) ("[A]n attorney will not be held to have performed deficiently for failing to perform a futile act, one that would not have gotten his client any relief.").

Also in his Rule 3.850 motion, Jenkins alleged that Kristina Boyd would have testified that: "[S]he kept her niece A.B.[,] her sister's then minor child[,] because the minor child A.B. and her brother had made similar allegations of sexual abuse against their mother's ex-boyfriend and after their mother [ ] got rid of the ex-boyfriend she asked her [sister] to keep the child victim which she did to assure the child's safety." (Doc. 9-3 at 187) Jenkins further alleged that Kristina Boyd would have testified: "[B]etween the alleged dates the child A.B. was not left alone with me[,] the mother['s] then live-in boyfriend, and that she was never told of any sexual abuse to her by me." (Doc. 9-3 at 187–88)

At trial, A.B. testified that she lived with her mother, her brother, and Jenkins and called Jenkins "Dad." (Doc. 9-2 at 641–42, 647) A.B.'s mother testified that Jenkins lived with her for about a year. (Doc. 9-2 at 781) K.F. testified that she spent the night at A.B.'s home and, she and A.B. slept in A.B.'s room. (Doc. 9-2 at 672–73, 677) A police officer dispatched to A.B.'s home for a report of a domestic battery testified that A.B.'s mother and "her daughter and niece" were at the home. (Doc. 9-2 at 765) Even if Kristina Boyd had testified that A.B. lived with her, Jenkins fails to show that the outcome at trial would have changed. Thus, the state court did not unreasonably apply *Strickland*. *Strickland*, 466 U.S. at 694.

Ground One is denied.

**Ground Two**

Jenkins asserts that trial counsel was ineffective for not investigating and presenting a defense that A.B. fabricated the accusations of sexual abuse. (Doc. 1 at 6) Jenkins contends that he and A.B.'s mother loudly argued about their relationship and he told A.B.'s mother that he was leaving her. (Doc. 1 at 6) During the physical fight, A.B.'s mother and A.B. began to scream and accuse Jenkins of raping A.B. (Doc. 1 at 6) Jenkins asserts that trial counsel neither investigated nor asked A.B.'s mother about these events. (Doc. 1 at 6) The post-conviction court denied the claim as follows (Doc. 9-3 at 212) (state court record citations omitted):

> The Defendant claims that he was denied effective assistance of counsel because counsel failed to pursue a fabrication defense. The Defendant alleges that he told the victim's mother that he was leaving her and that during this altercation the victim's mother told him that she was "gonna call the police and put you're a*s in jail. I'm going to tell them you raped my daughter!" The Defendant maintains that following this statement, the victim made the accusation that the Defendant raped her. The Defendant states that had counsel pursued this line of defense, it would have revealed the motives for the false charges against him and that the jury would have returned a verdict of not guilty.
>
> The Defendant fails to establish that counsel was deficient because counsel did pursue a fabrication defense at trial. Counsel argued that the victim did not like the Defendant because he was strict, made her do chores, and fought frequently with the victim's mother. Counsel also elicited testimony from the victim that she did not want her mother to have another boyfriend. Counsel used the victim's testimony to argue that the victim fabricated these allegations against the Defendant. Therefore, counsel did pursue a fabrication defense.
>
> Moreover, the Defendant fails to establish that he suffered prejudice. The record reflects that the victim told her mother that the Defendant raped her while an altercation was occurring between her mother and the Defendant. Based on the evidence presented to the jury, the jury was able to evaluate the

> credibility of the victim's testimony and the reasonableness of
> her allegations in light of the timeline of the investigation and
> the testimony and credibility of the other witnesses, and found
> her testimony credible. Thus, the Defendant fails to establish
> that he suffered prejudice. For the aforementioned reasons, this
> claim is denied.

On cross-examination, trial counsel elicited testimony from A.B. that supported a fabrication defense. A.B. testified that her mother and Jenkins frequently fought, and the fighting upset her. (Doc. 9-2 at 653) When Jenkins moved into A.B.'s home, A.B. did not want her mother to have another boyfriend. (Doc. 9-2 at 653) Jenkins enforced rules in the home and bossed A.B. and her brother around, which angered A.B. (Doc. 9-2 at 653) Jenkins required A.B. and her brother to wash dishes, massage his back and feet, clean their bedrooms, and rake leaves in the yard. (Doc. 9-2 at 653–55) If A.B. or her brother caused trouble, Jenkins required them to stand in the corner. (Doc. 9-2 at 654–55) A.B. admitted that she was happier when Jenkins did not live in her home. (Doc. 9-2 at 655) Jenkins was strict when A.B. misbehaved. (Doc. 9-2 at 666–67)

Also, trial counsel called A.B.'s mother as a defense witness and elicited testimony that supported a fabrication defense. A.B.'s mother testified the she called the police because she and Jenkins were fighting. (Doc. 9-2 at 780) A.B.'s mother and Jenkins fought over something unrelated to the sexual abuse. (Doc. 9-2 at 780) While A.B.'s mother and Jenkins waited for police to arrive, Jenkins told A.B.'s mother that she was going to jail in front of A.B. (Doc. 9-2 at 780–81) A.B. responded, "No, you're not going to jail. He is, for molesting me." (Doc. 9-2 at 781) When police arrived, A.B.'s mother told police about A.B.'s accusation. (Doc. 9-2 at 781) In closing argument, trial counsel argued that testimony by A.B. and her mother proved that A.B. had a motive to fabricate her accusations and therefore was not credible. (Doc. 9-2 at 794–97, 802–03)

Because trial counsel presented evidence in support of a fabrication defense and argued that defense in closing argument, the record refutes Jenkin's claim, and the state court did not unreasonably deny the claim.

Ground Two is denied.

**Ground Three**

Jenkins asserts that trial counsel was ineffective for not requesting funds from the trial court to retain an expert witness to testify that children under duress may lie for attention from adults and other family members. (Doc. 1 at 7–8) The post-conviction court denied the claim as follows (Doc. 9-3 at 212–14) (state court record citations omitted):

> The Defendant alleges that he was denied effective assistance because counsel failed to obtain an expert witness. The Defendant claims that he told counsel to interview an expert witness to testify as to the psychological and physical evidence in sexual assault cases. The Defendant argues that an expert would have aided in cross-examination and would have explained to the jury that children under duress make false claims for attention from adults and family members. The Defendant maintains that had counsel sought funds for a defense expert, this testimony would have supported his theory of defense and explained to the jury a reason for the lack of physical evidence. The Defendant contends that the outcome of the proceedings would have been different.
>
> As noted above, the *Nelson* test requires a defendant to allege (1) the identity of the prospective witness; (2) the substance of the witness's testimony; (3) an explanation of how the omission of this evidence prejudiced the outcome of trial; and (4) an assertion that the witness was available to testify. The Court notes a distinction for when a defendant claims counsel failed to call an expert witness. When alleging that counsel should have called an expert witness, a defendant does not need to name a specific expert or allege that the expert was available to testify. *See State v. Lucas*, 183 So. 3d 1027 (Fla. 2016); *see also Terrell v. State*, 9 So. 3d 1284 (Fla. 4th DCA 2009). Nevertheless, even though there is "no authority requiring the defendant to provide the name of a particular expert," the Defendant must assert the expert's field of expertise. *Terrell*, 9 So. 3d at 1284.

Furthermore, the Defendant must still set forth the substance of the prospective witness'[s] testimony and explain how the omission of the testimony prejudiced the outcome of the trial. *Terrell*, 9 So. 3d at 1284; *see Barthel*, 882 So. 2d at 1055 (citing *Nelson*, 875 So. 2d at 583–84).

As an initial matter, the Defendant's claim that counsel failed to locate this witness is refuted by the record. The Court held a colloquy with the Defendant about his desire to testify. During the colloquy, the Court asked the Defendant if he had asked his attorney to "locate any witnesses to testify in this case that have not been located and will not be here." The Defendant responded "no, sir." Therefore, the Defendant's claim that he asked counsel to locate this witness and that counsel failed to do so is refuted by the record.

Further, to the extent the Defendant is arguing that an expert would have testified that the victim was not credible or fabricated the allegations, this testimony would not have been allowed. *See Rhue v. State*, 693 So. 2d 567 (Fla. 2d DCA 1996); *Tumblin v. State*, 29 So. 3d 1093, 1101 (Fla. 2010) ("[A]llowing one witness to offer a personal view on the credibility of a fellow witness is an invasion of the province of the jury to determine a witness's credibility."); *Acosta v. State*, 798 So. 2d 809, 810 (Fla. 4th DCA 2001) ("It is clearly error for one witness to testify as to the credibility of another witness.").

In addition, as to the Defendant's claim that an expert would have provided the jury with an explanation as to why there was no physical evidence of abuse of the victim, this issue was presented to the jury during trial. Multiple witnesses testified as to the lack of physical evidence. In addition, counsel effectively argued that the lack of evidence supported the defense's position that the victim fabricated the allegations because she did not like the Defendant. Therefore, testimony from an expert reiterating the same conclusion would be cumulative.

Lastly, the Defendant's claim that an expert would have testified that children under duress falsify testimony and make false statements for attention from adults and family members and that this testimony would have caused the jury to return a not guilty verdict is vague and conclusory. *Griffin*, 866 So. 2d at 9. It is also speculative. Speculative claims cannot form the basis for post-conviction relief. *See Spencer v. State*, 842 So. 2d 52, 63 (Fla. 2003). For the aforementioned reasons, this claim is denied.

Jenkins failed to come forward with an affidavit or sworn testimony to show that an expert would have testified in the manner that he contends and, consequently, his claim is speculative. *Sullivan*, 459 F.3d at 1109; *Buckelew*, 575 F.2d 515, 521. Even so, at the end of the prosecution's case the trial court conducted a colloquy with Jenkins and Jenkins denied that trial counsel was unable to locate a witness whom Jenkins wanted to testify at trial. (Doc. 9-3 at 315–16)

Whether the trial court would have allowed an expert to testify that A.B. fabricated the accusations for attention from her family members is an issue of state law, and a state court's determination of state law receives deference in federal court. *Machin*, 758 F.2d at 1433. The trial court would have excluded the expert's opinion on the victim's credibility. *Feller v. State*, 637 So. 2d 911, 915 (Fla. 1994) ("An expert may not directly vouch for the truthfulness or credibility of a witness."); *State v. Townsend*, 635 So. 2d 949, 958 (Fla. 1994) ("It is well established, however, that an expert is prohibited from commenting to the fact-finder as to the truthfulness or credibility of a witness's statements in general."). Because the trial court would have excluded the expert's testimony, trial counsel was not ineffective for failing to present that testimony. *Pinkney*, 876 F.3d at 1297.

Also, A.B. testified that she did not immediately report the sexual abuse to police because Jenkins told her that he would go to prison and authorities would separate her from her mother. (Doc. 9-2 at 650) A sex crimes investigator testified that he spoke with A.B. on December 13, 2009, first learned about Jenkins's sexual abuse of A.B. on February 25, 2010 and arranged for a physical examination of A.B. on March 12, 2010. (Doc. 9-2 at 717–23) The investigator did not expect the examination to reveal physical evidence of sexual battery because A.B. did not immediately report the abuse. (Doc. 9-2 at 726) Also, a medical

examiner for the child protection team testified that an examination would not reveal forensic evidence of sexual abuse on a victim who reported the abuse two or three weeks after it occurred. (Doc. 9-2 at 696)

In closing argument, trial counsel argued that lack of physical evidence of the sexual battery supported reasonable doubt (Doc. 9-2 at 801):

> [Counsel:]     I also wanted to point out, again, that there was an exam set up for [A.B.], and she wasn't taken to that. It ended up the victim advocate had to take her to the exam, and, obviously, because of the late reporting, there was no physical evidence, and that was explained.
>
> So, ladies and gentlemen, again, I just ask you just to keep your eye on what the State proved in these allegations. That's what he's here on trial for today, and that's what the State has the burden of proving to you beyond a reasonable doubt that that incident occurred.

Because trial counsel argued that lack of physical evidence supported reasonable doubt even without testimony by a defense expert, the state court did not unreasonably apply *Strickland*. *Parker v. Allen*, 565 F.3d 1258, 1283 (11th Cir. 2009).

Ground Three is denied.

**Ground Four**

Jenkins asserts that trial counsel was ineffective for misadvising him not to testify at trial. (Doc. 1 at 9) The post-conviction court denied the claim as follows (Doc. 9-3 at 214–18) (state court record citations omitted):

> The Defendant states that counsel rendered ineffective assistance by failing to properly advise him of his right to testify. Specifically, the Defendant alleges that he informed counsel prior to trial that he wanted to testify. The Defendant alleges

that counsel advised him not to testify because "the state would believe the child victim over me anyways" and that his prior convictions would be brought out before the jury. The Defendant argues that counsel never informed him that it was his final decision whether he wanted to testify or not. The Defendant states that he would have testified that he never touched the victim inappropriately, never spent time alone with her, and would detail the events about an altercation between the Defendant and the victim's mother that he claims spurred the accusations against him. The Defendant indicates that he would have testified that the victim's mother, Barbara Boyd, told him that the victim previously made allegations against her prior boyfriend and that she did not believe her because she was a liar. The Defendant contends that if he had testified, the jury would have acquitted him of the charges.

When evaluating a claim of erroneous advice not to testify, the court must: (1) determine whether the defendant voluntarily agreed with counsel not to take the stand; and (2) determine whether counsel's advice to the defendant, even if voluntarily followed, was nevertheless deficient because no reasonable attorney would have discouraged the defendant from testifying. *Simon v. State*, 47 So. 3d 883, 885 (Fla. 3d DCA 2010) (citing *Lott v. State*, 931 So. 2d 807, 819 (Fla. 2006)). If it cannot be determined from the face of the record whether counsel's advice was reasonable, an evidentiary hearing is necessary. *Id.*

The Court finds that this claim is without merit. First, the record reflects that the Defendant's decision not to testify was made voluntarily. The Court conducted the following colloquy with the Defendant:

[Court:]          All right. Mr. Jenkins, sir, you understand, as a criminal Defendant, you have a constitutional right to remain silent? Do you understand that?

[Jenkins:]        Yes, sir.

[Court:]          And if you decide not to testify, the Court will instruct the jury that the fact that you do not testify is not to be considered by them in any way whatsoever in their deliberations. You understand that?

[Jenkins:]        Yes, sir.

16

[Court:]  All right. Now if you want to testify, you can certainly do that. If you testify, the Court will instruct the jury that your testimony is to be considered like the testimony of any other witness. Do you understand that?

[Jenkins:]  Yes, sir.

[Court:]  If you testify, the State attorney will, of course, be entitled to cross-examine you. The State will ask you if you have ever been convicted of a felony or a crime of dishonesty, and if so, how many times have you been so convicted? Do you understand that?

[Jenkins:]  Yes, sir.

[Court:]  Now, how many felony convictions or convictions of crime of dishonesty does the State have certified copies of?

[Prosecutor:]  Nine, your Honor.

[Court:]  Nine? Okay. Mr. Jenkins, have you had an opportunity to review those judgment [and] sentences and ascertain if they are your convictions?

[Jenkins:]  Yes, sir.

[Court:]  Okay. Are those your convictions?

[Jenkins:]  Yes, sir.

[Court:]  All right. Sir, if you decide that you want to testify and if you — and if the State cross-examines you and asks you if you've ever been convicted of a felony or a crime of dishonesty, as long as you answer nine — which I think both sides are agreeing is the amount of your prior number of convictions — as long as you answer nine, the State cannot ask you about the nature

17

[Court:]      of any prior convictions. You understand that, sir?

[Jenkins:]      Yes, sir.

[Court:]      Now, your right to remain silent belongs to you and not to anyone else including your attorney. Now, of course, you're well-advised to take the advice and counsel of your attorney into strong consideration, but in the final analysis, the final decision is up to you. Do you understand that, sir?

[Jenkins:]      Yes, sir.

[Court:]      Have you discussed with your attorney whether you want to testify in this case or not testify?

[Jenkins:]      No sir, I haven't discussed that yet.

[Court:]      Do you want some time to talk to her now?

[Jenkins:]      Yes, sir.

[Court:]      All right. Fine. Let's take about a ten-minute recess, and we'll come right back to this. Mr. Jenkins, you can talk to her now. We'll see where we stand in ten minutes. Okay?

. . .

[Court:]      Mr. Jenkins, would you stand up again, please, sir? Have you had an adequate opportunity to discuss with your attorney the issue of whether you want to testify or not?

[Jenkins:]      Yes, sir.

[Court:]      All right. Have you made a decision in that regard?

| | |
|---|---|
| [Jenkins:] | Yes, sir. |
| [Court:] | Okay, sir. What is your decision? You want to testify or you want to not testify? |
| [Jenkins:] | I do not wish to testify. |
| [Court:] | All right. Sir, and that — you're making that decision voluntarily? No one is forcing you to make that decision? |
| [Jenkins:] | Yes, sir, voluntarily. |
| [Court:] | Okay. Now, Mr. Jenkins, have you asked your attorney to locate any witnesses to testify in this case that have not been located and will not be here? |
| [Jenkins:] | No, sir. |
| [Court:] | Do you have any questions? |
| [Jenkins:] | Not at this time, sir. |
| [Court:] | Okay. Thank you. Well, one other thing. Mr. Jenkins, has anyone told you how to answer these questions? |
| [Jenkins:] | No, sir. |
| [Court:] | All right. Thank you, Mr. Jenkins. You may sit down. |

The Defendant's sworn testimony on the record reflects the voluntariness of his decision not to testify.

This Court must now turn to the second point of inquiry and determine whether counsel's advice to the Defendant not to testify was nonetheless deficient, meaning that "no reasonable attorney would have discouraged [the Defendant] from testifying." *See Simon*, 47 So. 3d at 885 (quoting *Lott*, 931 So. 2d at 819). Here, it is apparent from the record that counsel's advice was not deficient. The Defendant had an extensive criminal record. Had he testified, as he now claims he would have, the State would have been able to impeach him with the fact that he had previously been convicted of nine felonies. *See*

§ 90.610, Fla. Stat. Thus, the jury would have found out that the Defendant had a lengthy criminal record.

In addition, the Defendant's alleged testimony regarding what Barbara Boyd told him about the victim would not have been admissible. *See* § 90.801, Fla. Stat. (2010); *Pantoja v. State*, 59 So. 3d 1092, 1097 (Fla. 2011) (holding that sections 90.610, 90.608(2), and 90.405(2) do not permit impeachment of a witness with evidence of prior accusations of molestation by the victim that were either false or that did not result in a criminal conviction).

The Court recognizes that "[c]ounsel may be ineffective in advising [a] defendant not to testify at trial, where the defendant's proposed testimony would have been the only evidence establishing a legally-recognized defense to the charges." *See Tafolla v. State*, 162 So. 3d 1073, 1073 (Fla. 4th DCA 2015). However, the Defendant fails to establish that counsel was deficient because counsel used other evidence to pursue a fabrication defense at trial. Counsel argued that the victim did not like the Defendant because he was strict, made her do chores, and fought frequently with the victim's mother. Counsel also elicited testimony from the victim that she did not want her mother to have another boyfriend. Counsel used the victim's testimony to argue that the victim fabricated these allegations against the Defendant. Therefore, counsel was not deficient because there was additional evidence presented to pursue a fabrication defense.

Moreover, counsel's recommendation to the Defendant not to testify limited potentially damaging testimony from being elicited by the State. The record reflects that the victim testified that the Defendant lived with her, placed lotion on his penis, penetrated her vagina when her mother was not home, and threatened her not to tell anyone. Pursuant to the *Williams* rule[1], the victim also testified that she observed the Defendant sexually assault her cousin while the victim's mother was in the garage. The victim's cousin testified that the Defendant sexually assaulted her by placing his penis in her vagina. DNA testing confirmed that the Defendant's DNA was found on the victim's cousin and corroborated her allegations. The Court instructed the parties numerous times that the *Williams* rule evidence was very limited and that it not become a feature of the trial. Notably, had the Defendant testified, his testimony could have opened the door to cross-examination concerning his prior sex offense against the Defendant's cousin. *See*

§ 90.404(2), Fla. Stat. Considering the clear potential detriment and limited potential benefit, if any at all, of the Defendant's testimony about his innocence, the Court cannot find that counsel's general advice not to testify was unreasonable and certainly did not fall below a reasonable standard of representation. Therefore, it was reasonable for defense counsel to discourage the Defendant from testifying at trial given his prior felony convictions, asserted theory of defense, and potential detriment in testifying. *See Simon*, 47 So. 3d at 885 (quoting *Lott*, 931 So. 2d at 819).

[1] *Williams v. State*, 110 So. 2d 654 (Fla. 1959).

Lastly, the record refutes the Defendant's allegations of prejudice. Even if the Defendant had testified as he claims he would have, there is not a reasonable probability that the outcome of the trial would have been different. *See Haliburton*, 691 So. 2d at 470. Counsel's primary defense was fabrication. The Defendant alleges in his motion that had he testified that the victim fabricated the allegations because the Defendant threatened the victim's mother that he would put her in jail, the jury would have acquitted him of the charges.[2] However, the record reflects that counsel presented the defense of fabrication to the jury during opening statements, in her cross-examination of the victim, and again to the jury during closing arguments. Therefore, the Defendant was not prejudiced, because the jury considered the same fabrication defense the Defendant speaks of in the instant motion. Based on the foregoing, the Defendant's claim is denied.

[2] While the Court does not rely on this information, the Court notes inconsistencies in the Defendant's claims. The Defendant argues that the allegations against him were fabricated because he told Barbara Boyd that he was leaving her. Later in his motion, the Defendant alleges that the allegations were fabricated because he told her he was going to put her in jail.

The post-conviction court accurately quoted the colloquy between the trial court and Jenkins about his decision to not testify. (Doc. 9-2 at 748–53) During the colloquy, Jenkins agreed that the prosecutor identified nine convictions that belonged to him. (Doc. 9-2 at 749–50) Because the prosecutor would have impeached Jenkins with those convictions, trial

counsel was not ineffective for advising him not to testify. § 90.610(1), Fla. Stat.; *Spradling v. State*, 211 So. 3d 1144, 1145 (Fla. 1st DCA 2017) ("If the witness admits to or testifies accurately to the number of convictions, the witness may not be questioned further regarding prior convictions, nor question[ed] as to the nature of the crimes."). *Preston v. Sec'y, Dep't Corrs.*, 745 F. App'x 835, 838 (11th Cir. 2018) ("Preston's counsel, therefore, did not give him any affirmative misadvice because he was correct that Preston's criminal history could come out if he testified and, further, that the details of that history could come out if Preston opened the door.").

Whether Jenkins could have testified (1) about A.B.'s accusations against her mother's ex-boyfriend and (2) that A.B.'s mother did not believe A.B. because A.B. was a liar is an issue of state law, and a state court's determination of state law receives deference in federal court. *Machin*, 758 F.2d at 1433. The trial court would have excluded Jenkins's testimony about both matters. *Pantoja*, 59 So. 3d at 1096–98. *Jackson v. State*, 301 So. 3d 477, 480 (Fla. 1st DCA 2020) ("It is error to permit a witness to comment on the credibility of another witness because it is solely within the province of the jury to determine the credibility of witnesses."); *Gonzalez v. State*, 871 So. 2d 1010, 1011 (Fla. 4th DCA 2004) ("Section 90.609, Florida Statutes (2002) permits a party to attack the credibility of a witness 'by evidence in the form of reputation' relating to truthfulness. . . . A person's family is too narrow a segment of the community to be the source of reputation testimony under section 90.609."). Consequently, trial counsel was not ineffective for advising Jenkins not to testify. *Pinkney*, 876 F.3d at 1297.

Jenkins contends that he would have further testified that he fought with A.B.'s mother just before A.B. accused him of the sexual battery. At trial, trial counsel called A.B.'s

mother who testified that A.B. first accused Jenkins of sexual abuse when Jenkins threatened to send A.B.'s mother to jail during a fight. (Doc. 9-2 at 780–81) In closing argument, trial counsel argued that this testimony proved that A.B. had a motive to fabricate her accusations and therefore was not credible. (Doc. 9-2 at 794–97, 802–03) Because trial counsel presented a fabrication defense even without Jenkins's testimony, trial counsel was not ineffective for advising Jenkins not to testify. *Preston*, 745 F. App'x at 838 ("[E]ven if counsel had misadvised Preston, he has not established — as he must — that there is no 'reasonable argument' that he did not suffer prejudice as a result. The facts that Preston says he would have testified to in order to support his claim of self-defense were largely duplicative of the balance of the evidence at trial.").

Jenkins contends that he would have further testified that he did not inappropriately touch A.B. and never spent time alone with A.B. If Jenkins denied inappropriately touching A.B., the prosecutor would have impeached Jenkins with testimony by K.F. about similar sexual abuse. *Butler v. State*, 842 So. 2d 817, 827 (Fla. 2003) ("When a defendant takes the stand, his credibility may be impeached in the same manner as any other witness. More specifically, impeachment may be through questioning concerning prior acts of misconduct in a situation where the defendant has testified on direct examination that he has not or would not participate in such misconduct.") (citations omitted). K.F. testified that Jenkins placed his penis in her vagina. (Doc. 9-2 at 677–78) A.B. testified that she observed Jenkins abuse K.F. (Doc. 9-2 at 648) A full DNA profile from a swab on K.F.'s underwear and a partial DNA profile from a swab on K.F.'s vagina matched Jenkins's DNA. (Doc. 9-2 at 743–44) Because reasonable counsel would advise Jenkins to avoid impeachment with that unrebutted incriminating evidence for which Jenkins could produce no innocent

explanation, the state court did not unreasonably apply *Strickland*. *Fishbone v. Sec'y, Dep't Corrs.*, 165 F. App'x 800, 802 (11th Cir. 2006) ("Because Defendant's proposed testimony conflicted with that of two medical experts and would have exposed Defendant to damaging impeachment evidence, no reasonable possibility exists that the result of the proceedings would have differed if Defendant had testified.").

Ground Four is denied.

## Ground Five

Jenkins asserts that trial counsel was ineffective for not objecting to testimony by the prosecution's expert who improperly bolstered A.B. The post-conviction court denied the claim as follows (Doc. 9-3 at 218–19) (state court record citations omitted):

> The Defendant alleges that counsel rendered ineffective assistance by failing to object to the improper bolstering of the victim's credibility by the State's expert. Specifically, the Defendant states that the expert testified that while there was no physical evidence demonstrating a sexual assault, generally after an assault a victim's body would return to its normal shape and show no sign of abuse or a tear. The Defendant maintains that this testimony was improper bolstering and that had counsel objected, the Defendant's case would have been reversed on appeal.

> The Court notes that such an allegation is insufficient to establish prejudice pursuant to *Strickland*. When assessing prejudice in a claim of ineffective assistance of counsel for failing to preserve an issue for appeal, the relevant inquiry is with regard to the effect on the outcome of the trial, not the effect on appeal. *Bradley v. State*, 33 So. 3d 664, 683 n.20 (Fla. 2010) (citing *Strobridge v. State*, 1 So. 3d 1240, 1242 (Fla. 4th DCA 2009)); *see also Carratelli v. State*, 961 So. 2d 312, 322–23 (Fla. 2007). Accordingly, this claim was stricken and the Defendant was provided 60 days' leave to amend. However, the Defendant has failed to amend this claim. Therefore, this claim is denied with prejudice. *See* Fla. R. Crim. P. 3.850(e); *Spera v. State*, 971 So. 2d 754, 761 (Fla. 2007); *Almodovar v. State*, 74 So. 3d 1140, 1141 (Fla. 2d DCA 2011).

> In addition, even if the Court were to consider the Defendant's claim, it is without merit. While Officer Sequiera and Ms. Nadkarni testified that they would not expect to find physical evidence of the abuse due to the victim's late reporting of the assault, the witnesses did not testify that after an assault the victim's body would return to its normal shape and show no sign of abuse or tear. Moreover, even if the witnesses testified to this information, this would not be improper bolstering but would be proper expert opinion testimony. *See Oliver v. State*, 977 So. 2d 673, 677 (Fla. 5th DCA 2008). Based on the foregoing, this claim is denied.

The post-conviction court's dismissal of the claim for facial insufficiency is an adjudication on the merits owed deference under 28 U.S.C. § 2254(d). *Boyd v. Comm'r, Ala. Dep't Corrs.*, 697 F.3d 1320, 1331 (11th Cir. 2012) (quoting *Borden v. Allen*, 646 F.3d 785, 812–13 (11th Cir. 2011)). After the post-conviction court dismissed the claim in Jenkins's initial Rule 3.850 motion as facially deficient (Doc. 9-3 at 168), Jenkins asserted in his amended Rule 3.850 motion: "[T]he defendant[']s case would have been reversed on direct appeal if properly preserved, for a new trial. It was not the act of reasonable competent counsel." (Doc. 9-3 at 193) Because Jenkins failed to adequately allege prejudice, the state court did not unreasonably apply *Strickland*. *Strickland*, 466 U.S. at 694 ("The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.").

At trial on direct examination, a medical examiner with the child protection team testified as follows (Doc. 9-2 at 696):

> [Prosecutor:]    Now, in your experience as a nurse with Help A Child, do you find it that — let's say, for example, that a case is late reported by two to three weeks, maybe longer, would you do a SAVE exam in those particular cases? Is it common for you to find forensic evidence?

| | |
|---|---|
| [Witness:] | No. You don't find any forensic evidence after about 72 hours. |

On redirect examination, a detective who investigated crimes against children testified as follows (Doc. 9-2 at 726):

| | |
|---|---|
| [Prosecutor:] | Now, you were asked about [A.B.'s] mother taking her to the doctor? |
| [Detective:] | Yes. |
| [Prosecutor:] | And then [A.B.] having a CARS exam? |
| [Detective:] | Yes. |
| [Prosecutor:] | And is it uncommon — well, this is a case — was this case reported right away? |
| [Detective:] | No. It was late reported. |
| [Prosecutor:] | Would you expect to find anything? |
| [Detective:] | When it comes to actual physical evidence, no. It's more to make sure that the child has no internal damage or anything like that. So it's more to help a child out. |

The trial court ruled that this opinion testimony was admissible as follows (Doc. 9-2 at 688–89):

| | |
|---|---|
| [Prosecutor:] | Well, Judge, there was also some — independent of [K.F.'s] case — I wasn't going to go into this, but, globally speaking, I was going to ask the SAVE nurse that in her experience, if a crime is late reported, would there be any physical evidence, for example, from three weeks prior to the event. That was some additional questions that I was going to ask her. |
| [Court:] | This lady here? |

| | |
|---|---|
| [Prosecutor:] | Correct, and her experience as a SAVE nurse. |
| [Court:] | That's a different subject. I think that's fairly obvious. You're talking about something of some sexual — alleged sexual event happened a month or two before, would there be any physical evidence left? I mean, I think that's fairly obvious it wouldn't be, but that's a different question. I'll let you ask that question if that's what you're getting at. That doesn't have to do with the *Williams* Rule . . . . |
| | . . . Now, you can ask her a different — that's a different question. Well, you know, you're a SAVE nurse. Let me just ask you this: If a sexual event happened two months ago, would there be physical evidence in the victim's body or something — you know, that's a different subject matter. Okay. Are we clear on all this? |

Whether this testimony was admissible is an issue of state law, and a state court's determination of state law receives deference in federal court. *Machin*, 758 F.2d at 1433. Because the trial court would have overruled an objection to the testimony, trial counsel was not ineffective, and the state court did not unreasonably apply *Strickland*. *Pinkney*, 876 F.3d at 1297. *Geissler v. State*, 90 So. 3d 941, 947 (Fla. 2d DCA 2012) ("Of course, a nurse practitioner such as Ms. Nadkarni may testify to the physical findings observed on examination of a child victim. It is also proper for such a nurse practitioner to explain why, given the nature of the abuse alleged, physical injury may not be observed on examination.") (citations omitted).

Ground Five is denied.

**Ground Six**

Jenkins asserts that trial counsel was ineffective for not presenting an expanded motion for judgment of acquittal. (Doc. 1 at 12–13) He contends that trial counsel should have argued that no direct, physical evidence proved the sexual battery and the prosecution failed to rebut the defense's reasonable hypothesis of innocence that Jenkins did not commit the crimes. (Doc. 1 at 12–13) The post-conviction court denied the claim as follows (Doc. 9-3 at 219–20) (state court record citations omitted):

> The Defendant claims that counsel failed to file a sufficient motion for judgment of acquittal. Although the Defendant acknowledges that counsel did move for judgment of acquittal, the Defendant contends that counsel should have argued that there was no physical evidence against him presented at trial and should have filed a written motion in addition to his oral motion. The Defendant argues that a proper motion for judgment of acquittal filed by counsel would have been granted.

> To allege a facially sufficient claim for ineffective assistance of counsel based on a failure to preserve the sufficiency of the evidence claim for appeal by adequately moving for a judgment of acquittal, the movant must "state sufficient facts to show that he may very well have prevailed on a more artfully presented motion for acquittal based upon the evidence he alleges was presented against him at trial." *Neal v. State*, 854 So. 2d 666, 670 (Fla. 2d DCA 2003) (quoting *Boykin v. State*, 725 So. 2d 1203 (Fla. 2d DCA 1999)) (quotation marks omitted). A court cannot grant a motion for judgment of acquittal on the basis of conflicts in the testimony presented because resolving such conflicts is the duty of the jury. *See Sapp v. State*, 913 So. 2d 1220, 1223 (Fla. 4th DCA 2005). "[C]ourts should not grant a motion for judgment of acquittal unless the evidence is such that no view which the jury may lawfully take of it favorable to the opposite party can be sustained under the law." *Lynch v. State*, 293 So. 2d 44, 45 (Fla. 1974). "Where there is no showing that a motion for judgment of acquittal had a likelihood of success, a movant has not presented a facially sufficient claim of ineffectiveness of counsel." *Neal*, 854 So. 2d at 670 (citing *Rogers v. State*, 567 So. 2d 483 (Fla. 1st DCA 1990)).

The Defendant's claim must be denied because the Defendant would not have prevailed on the motion for judgment of acquittal had counsel made the argument that he proposes. In moving for judgment of acquittal, a defendant "admits all facts adduced in evidence, and the court draws every conclusion favorable to the state which is fairly and reasonably inferable from that evidence." *Spinkellink v. State*, 313 So. 2d 666, 670 (Fla. 1975). An argument that there was no physical evidence presented against the Defendant is not a sufficient basis for a court to grant a motion for judgment of acquittal. After the State rested its case, the defense moved for a judgment of acquittal. In response, the State argued that the victim's testimony implicated the Defendant. While counsel did not make specific arguments for a judgment of acquittal, the Court found that there was sufficient evidence to let the case go to the jury. The Court denied the motion for judgment of acquittal based on the aforementioned evidence. Additionally, counsel renewed the motion for judgment of acquittal which was also denied by the Court. In admitting the facts against him for purposes of the motion, in the light most favorable to the State, the testimony of the victim implicating the Defendant was sufficient evidence for the Court to rely on in denying the Defendant's motion for judgment of acquittal. Because the Defendant would not have prevailed on a motion for judgment of acquittal advancing the argument above, he has not established that counsel was ineffective. Accordingly, this claim is denied.

At the end of trial, the trial court denied Jenkins's motion for judgment of acquittal as follows (Doc. 9-2 at 747–48):

| [Trial counsel:] | Your Honor, at this time, now that the State has concluded their case, Defense would move for judgment of acquittal based on the grounds that the State has not provided a prima facie showing [on] all of the elements my client is charged with. |
| --- | --- |
| [Court:] | All right. What says the State. |
| [Trial counsel:] | Judge, we've provided information that the victim was under the age of 12, the Defendant was over the age of 18. |
| | The victim testified that the Defendant penetrated her vagina with his penis. She |

called it her pocketbook, but we used the diagram to show that the pocketbook is also what she calls her vagina.

[Court:]    All right. For the purposes of a motion for judgment of acquittal, the Defendant admits the facts in evidence, as well as every conclusion favorable to the State that the jury might fairly and reasonably infer from the evidence.

If there's room for a difference of opinion between reasonable people as to the proof or facts from which an alternate fact is to be established or whether there's room for such differences on the inferences to be drawn from conceded facts or to submit the case to the jury. [A] [c]ourt should not grant a motion for judgment of acquittal unless there is no view of the evidence which the jury might lawfully take favorable to the State.

The motion for judgment of acquittal would be denied.

A.B. testified that Jenkins put lotion on his penis and "stuck" his penis in her "pocketbook." (Doc. 9-2 at 649–50) A.B. testified that she uses the word "pocketbook" for vagina. (Doc. 9-2 at 645) A.B.'s observations were direct evidence of Jenkins's guilt. *State v. Adams*, 164 So. 3d 802, 804 (Fla. 1st DCA 2015) ("Direct evidence is that to which the witness testifies of his own knowledge as to the facts at issue.") (quotation marks and citation omitted).

Florida's circumstantial evidence standard applied only if the evidence of Jenkins's guilt was wholly circumstantial. *Knight v. State*, 186 So. 3d 1005, 1010 (Fla. 2016) ("[I]n determining whether the circumstantial evidence standard applies, the relevant evidence is that which points to the defendant as the perpetrator. Courts should ask whether the

evidence *of that particular defendant's guilt* is entirely circumstantial, not whether all of the State's evidence of the crime is circumstantial.") (italics in original). Because direct evidence was offered to prove Jenkins's guilt, trial counsel was not ineffective for not presenting an expanded motion for judgment of acquittal based on the circumstantial evidence standard. *Wilson v. State*, 884 So. 2d 1036, 1037 (Fla. 4th DCA 2004) ("[T]he victim's testimony that the defendant fondled her genitals is completely inconsistent with his hypothesis of an 'innocent' touching. Furthermore, as the victim's testimony constituted direct evidence of appellant's actions, this is not a case where the totality of evidence is circumstantial. Thus, this special rule is not applicable.").

In his reply, Jenkins expands his claim and argues that trial counsel should have argued that the prosecution failed to prove that Jenkins injured the sexual organs of A.B. (Doc. 13 at 2–7) The claim, raised for the first time on reply, is waived. *Oliveiri v. United States*, 717 F. App'x 966, 967 (11th Cir. 2018).

Even so, the prosecution charged Jenkins with violating § 794.011(2)(a), Fla. Stat., which states:

> A person 18 years of age or older who commits sexual battery upon, or in an attempt to commit sexual battery injures the sexual organs of, a person less than 12 years of age commits a capital felony, punishable as provided in ss. 775.082 and 921.141.

This subsection criminalizes either a sexual battery or an attempt to commit a sexual battery that injures sexual organs. § 794.011(2)(a), Fla. Stat. The information alleged that Jenkins committed a sexual battery — not an attempt to commit a sexual battery that injured A.B.'s sexual organs. (Doc. 9-2 at 431) Because a motion for judgment of acquittal based on the

lack of proof of injury to A.B.'s sexual organs would not have succeeded, trial counsel was not ineffective.[2] *Pinkney*, 876 F.3d at 1297.

Ground Six is denied.

**Ground Seven**

Jenkins asserts that trial counsel was ineffective for not filing a post-trial motion. (Doc. 1 at 13) He contends that trial counsel should have argued that the jury's guilty verdict was contrary to the weight of the evidence. (Doc. 1 at 13) The post-conviction court denied the claim as follows (Doc. 9-3 at 220–21) (state court record citations omitted):

> The Defendant argues that counsel was ineffective for failing to move or file a motion for a new trial. The Defendant claims that counsel should have argued that the verdict was contrary to the evidence. Specifically, the Defendant alleges that there was no *corpus delicti* or physical evidence to support his conviction and that had counsel moved for a new trial, the Court would have granted the motion.
>
> When asserting a claim that counsel was ineffective for failing to file a motion, a defendant must show that the motion had merit. *Ferrell v. State*, 29 So. 3d 959, 976 (Fla. 2010). When considering a motion for new trial based on a claim that the verdict is against the weight of the evidence, the trial court must exercise its discretion to determine whether a greater amount of credible evidence supports an acquittal. *See Kelley v. State*, 16 So. 3d 196, 196 (Fla. 1st DCA 2009) (citing *Ferebee v. State*, 967 So. 2d 1071, 1073 (Fla. 2d DCA 2007)[)].
>
> . . .
>
> [T]he Defendant fails to establish that the verdict was against the weight of the evidence because there was sufficient evidence

---

[2] Jenkins also asserts for the first time that trial counsel should have objected to the jury instructions which failed to require the prosecution to prove injury to A.B.'s organs. (Doc. 13 at 3–7) The trial court instructed that the prosecution had to prove that "[Jenkins] committed an act upon [A.B.] in which the sexual organ penetrated or had union with the vagina of [A.B.]" (Doc. 9-2 at 808) Because the information charged Jenkins with sexual battery and the jury instruction both tracked the definition of sexual battery in the relevant statute and conformed with the evidence, an objection to the jury instructions also would not have succeeded. § 794.011(1)(h), Fla. Stat. (defining sexual battery). *Pinkney*, 876 F.3d at 1297.

presented against him at trial. The victim testified that the Defendant assaulted her. In addition, *Williams* rule evidence from a second victim was presented at trial, identifying the Defendant as the individual who assaulted her. DNA testing confirmed that the Defendant's DNA was found on the second victim. Based on the foregoing, the Defendant fails to establish that the verdict was against the weight of the evidence. Accordingly, counsel was not deficient in failing to file a meritless motion and this claim is denied.

Whether a motion for new trial based on the weight of the evidence would have succeeded is an issue of state law, and a state court's determination of state law receives deference in federal court. *Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985) ("A federal habeas court has no power to grant habeas corpus relief because it finds that the state conviction is against the 'weight' of the evidence . . . ."). A.B. testified that Jenkins "stuck" his penis in her vagina. (Doc. 9-2 at 645, 649–50) K.F. testified that Jenkins placed his penis in her vagina. (Doc. 9-2 at 677–78) A full DNA profile from a swab on K.F.'s underwear and a partial DNA profile from a swab on K.F.'s vagina matched Jenkins's DNA. (Doc. 9-2 at 743–44) The trial court admitted K.F.'s testimony and the DNA evidence as relevant to prove "motive, opportunity, intent, common scheme, or plan on the part of [Jenkins]." (Doc. 9-2 at 692) Because the state court would not have granted the motion for new trial, trial counsel was not ineffective. *Pinkney*, 876 F.3d at 1297. *Daniels v. State*, 313 So. 3d 247, 253 (Fla. 1st DCA 2021) ("In determining whether to grant a new trial motion, the trial court must act, in effect, as an additional juror and consider the weight of the evidence to 'see whether a greater amount of credible evidence supports one side over the other.'") (citation omitted).

In his reply, Jenkins expands his claim and asserts for the first time that trial counsel should have argued that the evidence proved a lewd and lascivious battery, instead of a

sexual battery. (Doc. 13 at 7–11) The claim, raised for the first time on reply, is waived. *Oliveiri*, 717 F. App'x at 967.

Even so, the information alleged that Jenkins committed a sexual battery. (Doc. 9-2 at 431) "'Sexual battery' means oral, anal, or vaginal **penetration by**, or **union with**, the sexual organ of another or the anal or vaginal penetration of another by any other object . . . ." § 794.011(1)(h), Fla. Stat. (bolding added). The trial court instructed that the prosecution had to prove that "[Jenkins] committed an act upon [A.B.] in which the sexual organ penetrated or had union with the vagina of [A.B.]" (Doc. 9-2 at 808) A.B. testified that Jenkins penetrated her vagina with his penis. (Doc. 9-2 at 649–50) Also, the lewd and lascivious battery statute criminalizes sexual activity "with a person 12 years of age or older but less than 16 years of age." § 800.04(4)(a)(1), Fla. Stat. A.B. testified that Jenkins sexually battered her in late 2009 and she was born on August 20, 1999. (Doc. 9-2 at 641, 647–49) At the time of the crime, A.B. was 10 years old. Because A.B.'s observations were direct evidence of a sexual battery — not a lewd and lascivious battery, a motion for new trial would not have succeeded and trial counsel was not ineffective. *Adams*, 164 So. 3d at 804; *Pinkney*, 876 F.3d at 1297.

Ground Seven is denied.

**Ground Eight**

Jenkins asserts that trial counsel was ineffective for not requesting a hearing for a discovery violation when A.B.'s testimony at a pretrial hearing and at trial materially differed from her testimony at her deposition and her statement to police. (Doc. 1 at 13–14) The post-conviction court denied the claim as follows (Doc. 9-3 at 221–23) (state court record citations omitted):

The Defendant claims that counsel failed to request a hearing under *Richardson v. State*, 246 So. 2d 771 (Fla. 1971). Specifically, the Defendant alleges that the victim's testimony at trial was substantially different than her deposition testimony and police reports, constituting a discovery violation. The Defendant contends that the victim stated in her deposition that the Defendant never touched her inappropriately and did not threaten her, but that at trial, she testified that the Defendant had sexual intercourse with her, asked her to touch his penis, and threatened her that if she told anyone the "child protection team would take her and her brother away from their mother." The Defendant argues that if counsel had objected to this testimony and requested a *Richardson* hearing, he would have been acquitted of the charges.

When a trial court is alerted to a potential discovery violation, "it is required to make an adequate inquiry into the totality of the circumstances, including whether the violation was inadvertent or willful, whether it was trivial or substantial, and, most important, whether it prejudiced the defendant's ability to prepare for trial." *Charles v. State*, 903 So. 2d 314, 316 (Fla. 2d DCA 2005). A violation of *Richardson* is considered harmless unless "there is a reasonable possibility that the defendant's trial preparation or strategy would have been materially different had the violation not occurred." *Id.* at 317 (quoting *State v. Schopp*, 653 So. 2d 1016, 1020–21 (Fla. 1995)).

The Defendant fails to establish that counsel was deficient for failing to move for a *Richardson* hearing because there was no discovery violation. The record reflects that defense counsel deposed the victim. In addition, the victim testified at a pretrial hearing on September 16, 2011. During the hearing, the victim testified that the Defendant assaulted and threatened her. Therefore, the Defendant and counsel were aware of the victim's prior statements implicating the Defendant. Thus, no discovery violation occurred, and counsel was not deficient for failing to move for a *Richardson* hearing. *See Ferrell v. State*, 29 So. 3d 959, 976 (Fla. 2010) (stating that counsel "cannot be deemed ineffective for failing to raise a meritless argument"); *Forrest v. State*, 904 So. 2d 629, 629 (Fla. 4th DCA 2005) (finding no error in the trial court's failure to hold a *Richardson* hearing because there was no discovery violation where the record demonstrated that the evidence had been furnished to the defense prior to trial).

Further, the Defendant cannot demonstrate prejudice from counsel's failure to move for a *Richardson* hearing. As noted above, the victim was deposed by the defense and implicated the Defendant during a pretrial hearing. Counsel adequately cross-examined the victim based on inconsistencies between her testimony at trial and her prior statements. Therefore, the Defendant fails to demonstrate that he was prejudiced in the preparation for or strategy presented at trial. *Charles v. State*, 903 So. 2d 314, 316 (Fla. 2d DCA 2005).

Lastly, the Defendant's claim that had counsel requested a *Richardson* hearing he would have been acquitted is speculative. Speculative claims cannot form the basis for post-conviction relief. *See Spencer v. State*, 842 So. 2d 52, 63 (Fla. 2003). For the aforementioned reasons, this claim is denied.

Whether the prosecutor violated the state rules governing discovery is an issue of state law, and a state court's determination of state law receives deference in federal court. *Machin*, 758 F.2d at 1433. Jenkins contends that at her deposition A.B. testified that (1) A.B. never saw Jenkins naked, (2) Jenkins never inappropriately touched A.B., (3) Jenkins never made inappropriate sexual comments, (4) Jenkins never threatened A.B. and A.B. was not afraid of A.B. (Doc. 1 at 13)

At a pretrial hearing, A.B. testified that Jenkins "stuck his private part in [A.B.'s] private part." (Doc. 9-2 at 56) Afterwards Jenkins told A.B. that if A.B. told anyone about the sexual battery, Jenkins would go to prison and authorities would take A.B. away from her mother. (Doc. 9-2 at 66) A.B. further testified that she had seen Jenkins lying on her mother's bed naked some time before the sexual battery. (Doc. 9-2 at 69)

Also, at trial, trial counsel impeached A.B. with her statements to police as follows (Doc. 9-3 at 254–55) (bolding added):

| [Trial counsel:] | Okay. Now, do you remember telling [the police] that the night before this incident happened that you talked about with you and Mr. Jenkins, did you ever tell |

36

|  |  |
|---|---|
|  | anybody that the night before you were walking to the bathroom from your bedroom and you saw Mr. Jenkins in the kitchen naked? Did you ever tell them that? |
| [A.B.:] | Yes. |
| [Trial counsel:] | And I think — did you tell them that Mr. Jenkins asked you what you were doing? You said you were going to the bathroom and then you went to your bathroom and went back to bed; is that right? |
| [A.B.:] | Yes. |
| [Trial counsel:] | Okay. And you told them at that time that you saw Mr. Jenkins lying on the bed, correct, not standing up? |
| [A.B.:] | Yes. |
| [Trial counsel:] | And at that point in time, did you not tell them that Mr. Jenkins asked you if you saw his penis the night before when he was in the kitchen and you said no? Did you tell them that? |
| [A.B.:] | Yes. |
| [Trial counsel:] | Did — and you also — do you recall telling them that he asked you if you wanted to touch it and you said no and that you had to go to school; is that right? |
| [A.B.:] | Yes. |
| [Trial counsel:] | **And you told them initially that you went ahead and you left the house, you went to school, and he never touched you that day; isn't that right?** |
| [A.B.:] | Yes. |

| | |
|---|---|
| [Trial counsel:] | Okay. And that was — you said that wasn't in December when they came out about [K.F.], that it was a little bit later? |
| [A.B.:] | Yes. |
| [Trial counsel:] | Was that maybe like two months later or a little bit less? |
| [A.B.:] | Probably like — I don't know. I think probably like two months before it happened with me. Like all that started when I seen him naked in the kitchen. |

Trial counsel further impeached A.B. when the detective testified on cross-examination that A.B. initially denied that Jenkins had touched her. (Doc. 9-2 at 720–21)

Trial counsel knew before trial that A.B. had initially denied to police that Jenkins had touched her and impeached A.B. with that inconsistent statement at trial. Trial counsel further knew that Jenkins had threatened A.B. and made inappropriate comments. Consequently, the prosecutor violated no rules governing discovery and no violation procedurally prejudiced the defense. Fla. R. Crim. P. 3.220(j). *Bell v. State*, 930 So. 2d 779, 786 (Fla. 4th DCA 2006) (citing *Scipio v. State*, 928 So. 2d 1138 (Fla. 2006)); *Lopez v. State*, 711 So. 2d 563, 564 (Fla. 2d DCA 1997). Because a motion for a discovery violation hearing would not have succeeded, trial counsel was not ineffective, and the state court did not unreasonably apply *Strickland*. *Pinkney*, 876 F.3d at 1297.

Ground Eight is denied.

**Ground Nine**

Jenkins asserts that trial counsel was ineffective for not objecting to the trial court's response to the jury's questions during deliberations. (Doc. 1 at 14) The post-conviction court denied the claim as follows (Doc. 9-3 at 223) (state court record citations omitted):

The Defendant argues that counsel rendered ineffective assistance by failing to object to the Court's response to the jury questions. Specifically, the Defendant maintains that the jury inquired about the specific dates and times of the alleged offense. The Defendant states that the Court responded that it would not go over any testimony, "that it's been scheduled for a [two-]day trial and that no one is going anywhere until a verdict is returned." The Defendant claims that had the jury been allowed to enter the courtroom and address their concerns, the jury would have returned a verdict of not guilty.

As an initial matter, the Defendant's claim is refuted by the record. In response to the jury question, the Court stated to the jury in open court[:]

> [Court:]          All right. Good afternoon, ladies and gentleman. We have a question or a request. It says, ["]We want Detective Sequeira's testimony for the timelines of events.["] Folks, I must tell you, you have all the evidence you're going to get. You're going to have to use your collective memory to recall what you believe the testimony is or what the facts are. I'm not going to be able to give you anything else. Thank you. You're free to continue your deliberations.

Despite the Defendant's contention, the jury was permitted to enter the courtroom and the Court answered the jury's question. In addition, the Defendant's characterization of the Court's response is inaccurate. Therefore, the Defendant's contentions are refuted by the record.

Lastly, the Defendant's claim that had the jury been allowed to enter the courtroom and address their concerns, they would have returned a verdict of not guilty is speculative. Speculative claims cannot form the basis for post-conviction relief. *See Spencer v. State*, 842 So. 2d 52, 63 (Fla. 2003). For the aforementioned reasons, this claim is denied.

The post-conviction court accurately quoted the trial court's response to the jury's question. (Doc. 9-3 at 343–44) Trial transcripts show that the jury submitted the note with the request to the bailiff and the trial judge addressed the jury's request in open court. (Doc.

9-3 at 343–44) Because the record refutes Jenkins's claim, the state court did not unreasonably deny the claim.

In his reply, Jenkins expands the claim and asserts for the first time that trial counsel should have objected because the trial court failed to offer the jury to read or play back the detective's testimony. (Doc. 13 at 13–16) The claim, raised for the first time on reply, is waived. *Oliveiri*, 717 F. App'x at 967. Because Jenkins failed to raise the expanded claim in his amended Rule 3.850 motion (Doc. 9-3 at 199–200) and on appeal (Doc. 9-3 at 397), the claim is unexhausted and procedurally barred. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *McNair v. Campbell*, 416 F.3d 1291, 1304–05 (11th Cir. 2005).

Even so, Jenkins argues that Florida Rule of Criminal Procedure 3.410, as amended in 2015, required the trial court to offer the jury a read back of the detective's testimony. (Doc. 13 at 13–14) *In re Amends. to Fla. R. Crim. P.*, 188 So. 3d 764, 773 (Fla. 2015). The prosecution tried Jenkins in 2012, and the earlier version of Rule 3.410 provided the trial court with more discretion as follows:

> After the jurors have retired to consider their verdict, if they request additional instructions or to have any testimony read to them they shall be conducted into the courtroom by the officer who has them in charge and the court may give them the additional instructions or may order the testimony read to them. The instructions shall be given and the testimony read only after notice to the prosecuting attorney and to counsel for the defendant.

*Accord* Fla. Std. Jury Instr. (Crim.) 4.4 (2012).

*Hazuri v. State*, 91 So. 3d 836 (Fla. 2012) and *State v. Barrow*, 91 So. 3d 826 (Fla. 2012), which issued after Jenkins's trial, resolved a conflict between the state appellate courts concerning the trial court's obligation to offer the jury a read back of testimony. Before *Hazuri* and *Barrow*, the Second District Court of Appeals did not hold that the trial

court must inform the jury of the right to request a read back if the jury requests testimony. Other state appellate courts held that the trial court need not inform the jury of the right. *Hazuri v. State*, 23 So. 3d 857, 859 (Fla. 3d DCA 2009) ("[T]he trial court was under no obligation — as defense counsel suggested — to inform the jurors that a 'readback' of trial testimony may be available upon request."); *Frasilus v. State*, 46 So. 3d 1028, 1032 (Fla. 5th DCA 2010) ("We do not think it is either necessary or desirable to impose a requirement on the trial court to inform the jury of its right to request a read-back in response to any question from the jury concerning an issue of fact that may have been the subject of testimony somewhere during the course of trial.").

The trial court could have relied on these state appellate court opinions to deny trial counsel's request to offer the jury a read back. Philip J. Padovano, Florida Appellate Practice § 20:7 (2021 ed.) ("The trial court may select between two conflicting precedents only if the conflict between the district courts of appeal has not yet been resolved in the appellate court having jurisdiction over the trial court."); *Harris v. Sec'y, Fla. Dep't Corrs.*, 558 F. App'x 979, 983–84 (11th Cir. 2014) ("Although the Second District Court of Appeals had held years earlier that a failure to advise a jury of the right to have testimony read back to them had been fundamental error, that decision had been based on a statute that made a read-back mandatory, and that statute had since been repealed and replaced with a rule that 'eliminate[d] the mandatory language' and gave trial courts discretion whether to read back testimony.") (quoting *Frasilus*, 46 So. 3d at 1031–32). *Accord Rambaran v. Sec'y, Dep't Corrs.*, 821 F.3d 1325, 1334 (11th Cir. 2016) ("'[R]easonably effective representation cannot and does not include a [r]equirement to make arguments based on predictions of how the law may develop.'").

Also, the trial court did not mislead the jurors to believe that a read back was prohibited. *Barrow*, 91 So. 3d at 834–35. The trial court instead denied the jury's request for a read back. "As a general rule, trial courts have wide discretion in determining whether to grant read-back requests." *Hazuri*, 91 So. 3d at 841. "Indeed, 'courts have found no abuse of discretion even where the trial judge has, without much consideration, entirely rejected the jury's request for a read back.'" *Hazuri*, 91 So. 3d at 841 (citation omitted). *McKee v. State*, 712 So. 2d 837, 838 (Fla. 2d DCA 1998). Because Jenkins could not show either that the trial court would have granted trial counsel's request for a read back or that the outcome at trial would have changed, the state court did not unreasonably apply *Strickland*. *Strickland*, 466 U.S. at 694.

Ground Nine is denied.

**Ground Ten**

Jenkins asserts that trial counsel was ineffective for not objecting to Jenkins's absence during bench conferences. (Doc. 1 at 15) He contends that during a bench conference the parties discussed an expert from out of town who improperly bolstered the prosecution's case. (Doc. 1 at 15) He would have told trial counsel to object to the expert's testimony. (Doc. 1 at 15) The post-conviction court denied the claim as follows (Doc. 9-3 at 223–24):

> The Defendant argues that trial counsel rendered ineffective assistance by failing to protect the Defendant's right to be present. The Defendant contends that he was not present at the bench conferences during trial, including a bench conference in which the State's expert witness was discussed. The Defendant states that counsel should have objected to this testimony.
>
> First, the Court notes that a defendant does not have a constitutional right to be present at bench conferences which involve purely legal matters. *See Hardwick v. Dugger*, 648 So. 2d 100, 105 (Fla. 1994); *see also* Fla. R. Crim. P. Rule 3.180(a). A bench conference on whether or not a piece of evidence is

42

admissible is a purely legal question; and the presence of the Defendant at such a conference would not have been helpful in ensuring a more reliable determination on the matter. *See Muhammad v. State*, 782 So. 2d 343, 355 (Fla. 2001)[ ] [(]citing *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987) (finding that a defendant has a right to attend any critical proceedings where his presence would contribute to the fairness of the procedure)[)]. Additionally, the Defendant was present throughout the trial and does not allege that he raised any objection to the bench conferences or expressed any desire to participate in same. *See Hardwick*, 648 So. 2d at 105. Furthermore, the Defendant has failed to demonstrate that any matter was determined at these conferences that required his consultation or that any prejudice resulted from his absence during the conferences. *Id.* Thus, counsel was not deficient and this claim is denied.

The Defendant also claims that counsel should have moved for a *Frye*[3] hearing prior to this testimony being heard. The Defendant's claims, however, are vague and conclusory. The Defendant does not identify which witness counsel should have objected to and also fails to explain why counsel should have objected to this expert's testimony. Moreover, to the extent the Defendant is claiming that counsel should have objected because the testimony did not meet the *Frye* test, the Defendant fails to explain why the testimony does not meet this standard. Accordingly, this claim was stricken and the Defendant was provided 60 days' leave to amend. However, the Defendant failed to amend this claim. Therefore, this claim is denied with prejudice. *See* Fla. R. Crim. P. 3.850(e); *Spera v. State*, 971 So. 2d 754, 761 (Fla. 2007); *Almodovar v. State*, 74 So. 3d 1140, 1141 (Fla. 2d DCA 2011).

[3] *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923).

The post-conviction court's dismissal of the claim for facial insufficiency is an adjudication on the merits owed deference under 28 U.S.C. § 2254(d). *Boyd*, 697 F.3d at 1331. After the post-conviction court dismissed the claim in Jenkins's initial Rule 3.850 motion as facially deficient (Doc. 9-3 at 169–70), Jenkins asserted in his amended Rule 3.850 motion (Doc. 9-3 at 200–01):

> I was plainly denied my U.S. constitutional rights to confrontation of my accusers to hear the private conversation which may have been beneficial or detrimental in my case at trial, because there had been an issue concerning the state's expert who was flown in to testify about the evidence, who also bolstered the prosecution testimony. I would have told my trial counsel at the time to object to that testimony and reserve it on appeal. And also move for a *Frye* test hearing before testimony could be presented before the jury. I did question counsel about their private meeting during this bench conference, the reply was "who's the lawyer Mr. Jenkins?" "me or you?" and that she handled it.

Because Jenkins failed to both identify the expert witness and explain why the testimony by the expert witness would not have satisfied the requirements under *Frye*, the state court did not unreasonably deny the claim.

Also, because the bench conference would have concerned whether the expert's testimony was admissible under the rules of evidence, Jenkins did not have a federal constitutional right to attend. *United States v. Vasquez*, 732 F.2d 846, 848 (11th Cir. 1984) ("The right to be present at every stage of trial does not confer upon the defendant the right to be present at every conference at which a matter pertinent to the case is discussed, or even at every conference with the trial judge at which a matter relative to the case is discussed.") *Accord* Fed. R. Crim. P. 43(b)(3) ("A defendant need not be present under any of the following circumstances: The proceeding involves only a conference or hearing on a question of law.").

A crime laboratory analyst for the police department traveled from Boston, Massachusetts to testify. (Doc. 9-2 at 734) The analyst testified that he had a bachelor's degree in biology, took courses in statistics, attended specialized training in crime laboratory analysis, tested over one thousand DNA samples, and annually took and passed proficiency tests. (Doc. 9-2 at 735–37) The analyst compared DNA from Jenkins's saliva with DNA from

swabs from K.F.'s vagina and underwear with STR DNA analysis. (Doc. 9-2 at 740–41) The analyst obtained a full DNA profile from the swabs from K.F.'s underwear and a partial DNA profile from the swabs from K.F.'s vagina and opined that the DNA profiles matched Jenkins's DNA. (Doc. 9-2 at 743–44)

Even assuming Jenkins referred to this expert from out of town in his Rule 3.850 motion, the analyst's opinion based on STR DNA analysis complied with *Frye*. *Overton v. State*, 976 So. 2d 536, 553 (Fla. 2007) ("[W]e conclude that the STR DNA testing completed at the Bode Lab meets the requirements of the *Frye* test."); *Lemour v. State*, 802 So. 2d 402, 407 (Fla. 3d DCA 2001) ("[W]e hold that the test kit does not present a new scientific technique where, as here, it uses PCR/STR testing methods that are generally accepted by the scientific community.").

Because the outcome at trial would not have changed if Jennings had attended a bench conference concerning the analyst's testimony and insisted trial counsel object to the expert's testimony, the state court did not unreasonably apply *Strickland*. *Strickland*, 466 U.S. at 694.

Ground Ten is denied.

**Ground Eleven**

Jenkins asserts that the prosecutor violated *Giglio v. United States*, 405 U.S. 150 (1972) by knowingly presenting false testimony by A.B. (Doc. 1 at 15) The post-conviction court denied the claim as follows (Doc. 9-3 at 224–25) (state court record citations omitted):

> The Defendant attests that his conviction was obtained through the State knowingly presenting false testimony from its material witness, victim A.B., constituting a violation under *Giglio v. United States*, 405 U.S. 150 (1972). To state a claim under Giglio, the Defendant must allege that "(1) the testimony given was false; (2) the prosecutor knew the testimony was false; and (3) the statement was material." *Guzman v. State*, 868 So. 2d 498, 505 (Fla. 2003). A statement is material under *Giglio* "'if

there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.'" *Id.* at 506.

The Defendant alleges that the testimony of the victim was false, that the State knew this testimony was false because of the discrepancies between her deposition and pretrial hearings, and that this was the main evidence used to convict the Defendant. The Defendant contends that without the use of this false testimony, the outcome of the trial would have been different and he would have been acquitted of the charges.

The Defendant fails to establish that the testimony of the victim was false or that the State knew the testimony given was false. The issue of the victim's credibility was the main focus of the trial. The defense strongly argued that the victim was not credible and fabricated the allegations. The State argued that the victim's version of events was consistent. Although the Defendant disputes the allegations, he fails to demonstrate that the testimony was false and that the State knew the testimony was false. Thus, this claim is denied.

"*Giglio* error, which is a species of *Brady* error, exists when the undisclosed evidence demonstrates that the prosecution's case included perjured testimony and that the prosecution knew, or should have known, of the perjury." *Trepal v. Sec'y, Fla. Dep't Corrs.*, 684 F.3d 1088, 1107 (11th Cir. 2012) (internal quotations and citations omitted). "[B]ecause *Giglio* error is a type of *Brady* violation, the defendant generally must identify evidence the government withheld that would have revealed the falsity of the testimony." *United States v. Stein*, 846 F.3d 1135, 1147 (11th Cir. 2017).

Jenkins identifies no evidence that the prosecution withheld which proved that the prosecution presented perjured testimony. Jenkins instead asserts that A.B.'s testimony at her deposition and the pretrial hearing proved that her testimony at trial was false. (Doc. 9-3 at 201–02) Testimony inconsistent with an earlier statement is not perjurious and does not violate *Giglio*. *Tejada v. Dugger*, 941 F.2d 1551, 1557 (11th Cir. 1991). Also, trial counsel was aware of A.B.'s testimony at both her deposition and the pretrial hearing and

impeached A.B. with that testimony at trial. (Doc. 9-2 at 663–68) *Hammond v. Hall*, 586 F.3d 1289, 1309 (11th Cir. 2009). The jury evaluated A.B.'s credibility based on that impeachment. *Pearce v. State*, 880 So. 2d 561, 569 (Fla. 2004). Consequently, the state court did not unreasonably apply *Giglio*.

Ground Eleven is denied.

**Ground Twelve**

Jenkins asserts that cumulative error entitles him to relief. (Doc. 1 at 15) Because no series of errors exists to accumulate, the cumulative error claim is meritless. *Morris v. Sec'y, Dep't Corrs.*, 677 F.3d 1117, 1132 (11th Cir. 2012).

Ground Twelve is denied.

Accordingly, it is **ORDERED** that Jenkins's petition (Doc. 1) is **DENIED**. The **CLERK** is directed to enter judgment against Jenkins and **CLOSE** this case.

<u>CERTIFICATE OF APPEALABILITY</u>
<u>AND</u>
<u>LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL</u>

Jenkins neither makes a substantial showing of the denial of a constitutional right, nor shows that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000). Consequently, a certificate of appealability and leave to appeal *in forma pauperis*

are **DENIED**. Jenkins must obtain permission from the court of appeals to appeal *in forma pauperis*.

      **DONE AND ORDERED** in Tampa, Florida on August 11, 2021.

                                    _____

                                    MARY S. SCRIVEN
                                    UNITED STATES DISTRICT JUDGE